UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| DAVID JONES, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:15-CV-337-REW |
| | ) | |
| v. | ) | |
| | ) | OPINION AND ORDER |
| CLARK COUNTY, KENTUCKY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

"The Constitution does not guarantee that only the guilty will be arrested." *Baker v. McCollan*, 99 S. Ct. 2689, 2695 (1979). David Jones's case is but one—though surely unfortunate—example of that truism. Following remand from the Sixth Circuit, *see Jones v. Clark Cnty.*, 690 F. App'x 334, 336 (6th Cir. 2017), the parties have litigated the case, and Clark County, Sheriff Berl Perdue, Jr., and Officer Lee Murray seek summary judgment. DE #61 (Motion); *see also* DE ##69 (Response); 72 (Reply). Because, for the following reasons, Jones's federal and state malicious prosecution theories fail, the Court **GRANTS** DE #61 and dismisses the case.

I.  BACKGROUND

The Sixth Circuit, on a preliminary record at the time, previously provided the following case background:

> In October 2013, the police tracked a 39-second video of child pornography to an IP address and tracked that IP address to subscriber David Jones. Officer Lee Murray secured and executed a search warrant for Jones's residence, seizing a tablet computer, cellphone, modem, printer, and DVDs. Officer Murray arrested Jones, who waived his right to counsel and answered all questions, denying any knowledge of any child pornography. [T]he police did not investigate the seized devices to

1

> determine whether they contained any child pornography, such as the 39-second video. Had the police done any such investigation, they would have discovered that they did not. Nonetheless, Officer Murray recommended charges and the prosecutor obtained a grand-jury indictment charging Jones with promoting a minor in a sexual performance, in violation of K.R.S. § 531.320(2)(b).
>
> Over a year later, in November 2014, the authorities had still done no investigation of the seized devices, at which point Jones's attorney had an expert examine them. They were found to contain no evidence of child pornography. Jones moved to dismiss the indictment and the state court released him on December 15, 2014. Jones had spent 14 months in jail.

*Jones*, 690 F. App'x at 334-35. At the motion to dismiss stage, the Sixth Circuit found factual issues and remanded Judge Reeves's dismissal order.

Jones has voluntarily narrowed the case to malicious prosecution theories under federal (via 42 U.S.C. § 1983[1]) and Kentucky law. *See* DE #69.[2] The Court has reviewed the entire record, including every page of the depositions, *see* DE #62, and summary judgment exhibits. Defendants' motion is fully briefed and ripe for consideration.[3]

## II.  STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party.

---

[1] Section 1983 generally provides a federal cause of action against state officials for the deprivation of federal constitutional rights under color of state law. Jones identifies the Fourth Amendment as undergirding the federal constitutional rights at issue. *See* DE #69, at 17.
[2] Accordingly, the Court dismisses all other claims as voluntarily abandoned. *Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013); *Clark v. City of Dublin*, 178 F. App'x 522, 524-25 (6th Cir. 2006).
[3] The briefing—especially Plaintiff's response, DE #69—is not a model of clarity concerning the theories in play as to each defendant. This Opinion addresses the remaining arguments as best as the Court can understand and organize them.

*Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 F.3d at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 106 S. Ct. at 2552; *see also id.* at 2557 (Brennan, J., dissenting) ("If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's

evidence is insufficient to establish an essential element of the nonmoving party's claim." (emphasis in original)).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511; *Matsushita Elec.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be suitable for admission into evidence at trial. *Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006).

## III. ANALYSIS

Defendants primarily argue that various doctrines grant them immunity from Jones's claims. *See* DE #61-1, at 8-22. The Court analyzes the federal and state issues distinctly.[4]

### A. Federal Malicious Prosecution Claim

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 102 S. Ct. 2727, 2738 (1982); *see also, e.g.*, *Robertson v. Lucas*, 753 F.3d 606, 610 (6th Cir. 2014) (affirming grant of qualified immunity to state

---

[4] Jones sued Perdue and Murray only in their individual capacities. *See* DE ##1; 10, at 3. The Amended Complaint evidences no different intent.

4

and federal law enforcement officers); *Barnes v. Wright*, 449 F.3d 709, 711 (6th Cir. 2006) (reversing denial of qualified immunity to law enforcement officers in a § 1983 suit).

"Since the defendant[s] have raised the qualified immunity defense, plaintiff bears the burden of showing that defendants are not entitled to qualified immunity." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). In the summary judgment context, the Court "view[s] all evidence, and draw[s] all reasonable inferences, in the light most favorable to the nonmoving party," here Jones. *Kent v. Oakland Cnty.*, 810 F.3d 384, 390 (6th Cir. 2016) (internal alteration removed).

To evaluate the qualified immunity question, courts engage in a two-part inquiry: "First, taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right? Second, is the right clearly established?" *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006); *see also Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) (holding that courts may address the two questions in either order). The right must be "so clearly established in a particularized sense that a reasonable officer confronted with the same situation would have known that his conduct violated that right." *Moseley*, 790 F.3d at 653. The Court must avoid "a high level of generality" in assessing the clarity of the right or misconduct. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) ("The dispositive question is whether the violative nature of *particular* conduct is clearly established. . . . This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." (internal quotation marks omitted) (citing *Brosseau v. Haugen*, 125 S. Ct. 596 (2004))). "Clearly established means that, at the time of the officer's conduct, the law

was sufficiently clear that every reasonable official would understand that what he is doing is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate. This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotation marks and citations removed).

"To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor." *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (internal quotation marks, citations, and footnote removed).

A critical element is the second—that Jones must show that there was a lack of probable cause for the prosecution.[5] Ultimately, the interplay between the probable cause and qualified immunity standards dooms the effort.

> A police officer has probable cause if there is a "fair probability" that the individual to be arrested has either committed or intends to commit a crime. *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001) (quoting

---

[5] The Court elects to process the summary judgment motion without analyzing Defendants' element 1 arguments due to (1) the Sixth Circuit's prior treatment, (2) a review of Murray's grand jury testimony, and (3) the clarity by which *Sykes* element 2 disposes of the federal claim.

6

> *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989)), *cert. denied*, 535 U.S. 955, 122 S. Ct. 1358, 152 L. Ed. 2d 354 (2002). A police officer determines the existence of probable cause by examining the facts and circumstances within his knowledge that are sufficient to inform "a prudent person, or one of reasonable caution," that the suspect "has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979).

*Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). Probable cause is a common-sense, "fluid," "practical," and "nontechnical" analysis that looks (through an objective prism) to the totality of the circumstances known at the time. *Maryland v. Pringle*, 124 S. Ct. 795, 799-800 (2003); *Whren v. United States*, 116 S. Ct. 1769, 1773-74 (1996); *Illinois v. Gates*, 103 S. Ct. 2317, 2331-33 (1983). The standard requires "more than mere suspicion" but not "evidence to establish a prima facie case . . . much less evidence sufficient to establish guilt beyond a reasonable doubt." *United States v. Strickland*, 144 F.3d 412, 416 (6th Cir. 1998). Probable cause exists if there is a reasonable basis for belief that a person committed a particular crime. *See, e.g.*, *United States v. McClain*, 444 F.3d 556, 562-63 (6th Cir. 2005).

Applying that standard, Jones fails both prongs of the qualified immunity inquiry. Law enforcement had—and a reasonable officer could have understood, in October 2013, there to be—probable cause to arrest and prosecute the subscriber of an IP address based, in context, on the subject IP address being used to transmit child pornography—a predicate fact Jones himself admitted, *see* DE #21, at ¶ 1 (acknowledging that "his IP address was used to download a 39-second video of child pornography").[6] *See, e.g.*,

---

[6] Murray, in fact, understood this. *See* DE #62-2 (Murray Depo.), at 41 (Q: "Why did you put him under arrest?" A: "Because we had probable cause that he downloaded a child pornography file." . . . Q: "What was the probable cause that he'd downloaded the child pornography file?" A: "That it came from his IP address."). Murray logically

7

*United States v. Gillman*, 432 F. App'x 513, 515 (6th Cir. 2011) ("[T]he IP address here established a sufficient nexus connecting the sharing of child pornography to Gillman's residence and computer. Gillman is correct—he could have used a wireless network and someone else could have accessed that network and shared child pornography. This possibility, however, does not negate the fair probability that child pornography emanating from an IP address will be found on a computer at its registered residential address."); *United States v. Sloan*, 307 F. App'x 88, 90 (9th Cir. 2009) ("Here, where an administrative subpoena revealed that an IP address registered to Sloan was associated with files confirmed to contain child pornography, a prudent officer would have concluded that there was a fair probability that Sloan possessed those files in violation of 18 U.S.C. § 2252(a)(4). Thus, the district court correctly concluded that the officers had probable cause to place Sloan in custody."); *Hall v. City of Williamsburg*, No. 6:16-304-DCR, 2017 WL 2274327, at *15 (E.D. Ky. May 24, 2017) ("[T]he fact that the solicitation post had originated from Hall's IP address established probable cause to

---

explained how and when Jones "became" the "suspect of the case." *Id.* at 42-43; *see also* DE #62-6 (Flannery Depo.), at 41-42.

The parties, bafflingly, nowhere address the elements of KRS 531.320. Nevertheless, it appears (and is certainly reasonably arguable), without the benefit of litigant advocacy, that probable cause supported Jones having promoted—a term that includes publishing and procuring—a sexual performance by a minor under 16 via Internet download. *See Clark v. Commonwealth*, 267 S.W.3d 668, 677 (Ky. 2008); *see also id.* at 676, 678 (noting that the promotion statute "is violated when one either actively or passively . . . brings forth through their efforts the visual representation of a minor in a sexual performance before an audience," which can include "an audience of one"); *see generally Greene v. Reeves*, 80 F.3d 1101 (6th Cir. 1996) (reversing denial of qualified immunity in case originating with a KRS 531.320 charge). Indeed, the warrant affidavit depicts the IP address as having made the file available on a peer-to-peer program, thus circulating the video. *See* DE #8-3. This surely suffices under the statute. Plaintiff contests nothing specific about KRS 531.320, forfeiting any possible particular argument(s). *See, e.g.*, *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 332-33 (6th Cir. 2009); *Brenay v. Schartow*, 709 F. App'x 331, 336-37 (6th Cir. 2017); *United States v. Edwards*, No. 2:12-cv-1060, 2014 WL 4928930, at *2 (S.D. Ohio Oct. 1, 2014).

8

believe that he was responsible for the post soliciting an individual's murder. Hall's suggestion that an IP address is insufficient to establish probable cause is inaccurate."); *id.* (finding "probable cause to support the criminal prosecution for solicitation of murder based solely on the IP address to which Hall subscribed"); *Tuskan v. Jackson Cnty.*, 134 F. Supp. 3d 1041, 1050 (S.D. Miss. 2015) ("[A]ssuming that Thornton . . . arrested Tuskan, . . . Thornton arguably had probable cause to do so based on the evidence she had at the time that child pornography had been downloaded at Tuskan's IP address."); *cf. United States v. Hinojosa*, 606 F.3d 875, 885 (6th Cir. 2010); *United States v. Vosburgh*, 602 F.3d 512, 526-27 (3d Cir. 2010); *United States v. Perez*, 484 F.3d 735, 740-41 (5th Cir. 2007); *United States v. Carter*, 549 F. Supp. 2d 1257, 1268-69 (D. Nev. 2008); *United States v. Caraballo-Colon*, No. 13-383 (CCC/BJM), 2016 WL 11214117, at *14 (D.P.R. Nov. 2, 2016).[7]

Additional facts law enforcement learned reasonably and undoubtedly corroborated the existence of probable cause. The download involved use of the ARES program and a specific date and time. *See* DE ##69, at 8 (Plaintiff admitting that he told officers that "he lived alone and had been home alone the night of the download," that "his router was password-protected," and "that he'd heard of the ARES program"); 62-1 (Jones Depo.), at 69 (admitting that he "never shared" his router or tablet passwords "with anyone"); 61-3 (Murray Depo.), at 10 (Depo. p. 43); *id.* at 12-13 (Depo. pp. 83-84); 62-2, at 43. Indeed, Jones, in the state case, did not dispute the existence of probable

---

[7] Jones's argument that the Sixth Circuit already determined in this case that "there was no basis for the Grand Jury's finding of probable cause," DE #69, at 22, strains credulity. The Circuit, reviewing the pleadings only in a Rule 12 context, and with no evidence before it, made no such categorical finding.

9

cause when given the opportunity. *See* DE #69, at 9 (admitting that he "waived a preliminary hearing").

As to some of Plaintiff's suggestions, while officers may not "simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone," *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 305 (6th Cir. 2005), neither must they "investigate further or . . . look for additional evidence which may exculpate the accused." *Id.* at 308. Indeed, "a policeman is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Id.* (alterations omitted). Officers generally are not "liable for evidence which they failed to collect and, therefore, of which they were unaware." *Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999). Even if an officer's "investigation . . . was no model of thoroughness and left many reasonable sources of evidence unexplored," he may yet have probable cause. *Id.*

These principles are apt here. Law enforcement, simply put, "had no duty to investigate further once probable cause was established." *Sussman v. Dalton*, 552 F. App'x 488, 493 (6th Cir. 2014). A "failure to [take additional investigatory steps wa]s, as a legal matter, not material to the finding of probable cause." *Sussman*, 552 F. App'x at 493. A requirement to "sift through" evidence "for potentially exculpatory" information, in this context, "would waste valuable time and resources, and impede the police's ability to make a timely arrest." *Stahl v. Czernik*, 496 F. App'x 621, 626 (6th Cir. 2012) (stating that although an officer "might have conducted a more thorough investigation," a "failure to find information" is not a basis for a § 1983 claim). Simply put, "where there is

probable cause to prosecute, a § 1983 action for malicious prosecution will not lie, . . . regardless of any alleged false statements made by the investigator at the probable cause hearing." *McKinley v. City of Mansfield*, 404 F.3d 418, 445 (6th Cir. 2005) (internal brackets omitted).

Jones, further, fails in his duty to "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *White v. Pauly*, 137 S. Ct. 548, 552 (2017); *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 992-93 (6th Cir. 2017) (requiring a plaintiff to "identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires"). To the contrary, as the above discussion demonstrates, case law (both pre- and post-prosecution) affirms the constitutionality of law enforcement's actions here. At bottom, the Court, based on the facts at the time, agrees with Defendants' pithy summary that "Jones had no clearly established right to avoid prosecution when his IP address was used as a download source for child pornography." *See* DE #61-1, at 13.

The Court has several observations about the sequence, the actions by Murray, and the Sixth Circuit's prior treatment. The record shows, without contradiction, that Murray did retrieve the devices and analysis from the Lexington police. *See, e.g.*, DE #62-2, at 89-96. The result was mixed: the phone had no CP evidence, but it did show a semi-confirmatory connection to the ARES software (though the content was not itself inculpatory). Lexington authorities could not access the tablet, so the content of that device was unknown—at best a neutral position relative to the crime alleged.

There is a question over when Murray alerted the prosecutors of the Lexington results. The prosecutors themselves are not clear, and the documentation is contradictory

or subject to interpretation. It is somewhat illogical to think that the prosecutors would not have more specifically mentioned the Lexington forensics at some point in the criminal case, and those forensics did not fully emerge until after the civil case blossomed into litigation.[8]

No matter, though, on the analysis. Remember that Murray is absolutely immune for statements made at the grand jury.[9] The Sixth Circuit has noted an exception for the presumptively preclusive effect of an indictment, as to probable cause, for possible actions by a defendant "that are prior to, and independent of, . . . grand-jury testimony." *King*, 852 F.3d at 586. Here, even if a *King* deviation might otherwise exist, Plaintiff has not pointed to conduct by Murray *prior to and independent of* his grand-jury testimony that would state an exception. Further, Plaintiff has not shown false statements or fabricated evidence related to Murray and his initiating role. Murray made a valid arrest,

---

[8] The Court watched all videos tendered at DE #91. In relevant part, the prosecutor opposed Jones's report-based dismissal request as an improper attempt to have the court "make a finding of fact" and invade the jury's province. She likewise represented that "we also have reports and experts and all of that will be fleshed out by a jury." *See* File named "2014-12-15_12.52.11.843," at 08:49-09:06. Judge Clouse agreed, regarding the oral dismissal motion, that such factual issues are "indeed what a jury decides," although the Commonwealth would likely have "a heavy burden," given the defensive report. *Id.* at 10:25-10:45. Logically, that the prosecutor did not specifically mention the content of the Lexington report, in but a few, quick-fire seconds of oral argument, is not affirmative proof that law enforcement concealed the report. Indeed, if anything, her reference to the Commonwealth's own "reports and experts" would indicate the opposite—that law enforcement *had* disclosed the Lexington report, even if, perhaps (based on the context of the remark), the prosecutor was unaware of (or had forgotten) the precise content. Any such potential issue is not, of course, law enforcement's problem.

[9] The Court has reviewed the testimony carefully. Murray's language may have been sloppy and perhaps ill-informed, from a technical standpoint. It is hard to read any of his remarks as false, but false or not, Murray, as any grand-jury witness, is immune from liability for testimony. *See King v. Harwood*, 852 F.3d 568, 584 (6th Cir. 2017). Contrary to Jones's suggestions, Murray told the grand jury that the devices had not yet been analyzed, and he told the grand jury that Jones denied any knowledge of the alleged illegal activity. *See* DE #62-9, at 4, 6.

and he later secured the limited forensic report from the Lexington department. Whether Murray did or did not timely tell prosecutors of the report, the substance—which did not reveal tablet content—would not have defeated probable cause or represented falsity by Murray.

Regardless, *King* is about the presumptive effect of an indictment; even if the indictment itself does not conclusively end the probable cause inquiry, the analysis in this Opinion shows that there was, indeed, probable cause for the prosecution at the time the grand jury returned the indictment. Authorities verified CP through an identified router. That router belonged to Jones and was password protected. Jones lived alone, was home at the time of the alleged electronic conduct, and testified that he did not share with anyone his devices or router password. Further, he knew about the file-sharing program and his phone showed use of that program. A reasonable basis existed to believe that Jones himself was involved in the transfer of contraband.[10]

The Sixth Circuit suggested in its analysis that Murray could be liable just for failing to pursue device analysis.[11] *See Jones*, 690 F. App'x at 336. The Court has not

---

[10] Curiously, Jones admits there was probable cause to search his home, but denies probable cause to arrest or prosecute. If there was probable cause to search, and if (as was true) Jones lived alone and had exclusive access to the router, surely the probable cause then logically extended from mere search to arrest. The later facts added to the former facts, making Jones a likely suspect. The Court is not persuaded that law enforcement must search every device and conclusively build its final case before probable cause accretes. Probable cause is a lesser and preliminary standard. Jones's critique that probable cause is not proof beyond a reasonable doubt is obviously true but not helpful. Of course, police can have enough to meet probable cause but not enough for ultimate convicting proof. That is the nature and progression of the criminal pretrial and trial processes.

[11] Again, the appellate court context was a motion to dismiss with no developed record and an allegation that Murray misled the grand jury and prosecutors. The developed record shows a more complete chronology and sequence of information very different

found a situation or case supporting the proposition that failure to analyze evidence equates to culpable conduct for purposes of malicious prosecution. The cases cited above suggest the opposite. *See also, e.g.*, *Mills v. Barnard*, 869 F.3d 473, 485-86 (6th Cir. 2017) (discussing standard regarding a claim that an officer suppressed DNA testing known to be "exonerating exculpatory evidence"); *Moldowan v. City of Warren*, 578 F.3d 351, 387-89 (6th Cir. 2009). Even if that is the standard, Murray did secure the partial analysis, and that analysis was not, in any sense, fully exculpatory. Indeed, even after Jones secured his own analysis and presented that to the Clark Circuit Court, that court refused to dismiss the indictment and recognized the need for a jury finding on the particular and competing evidence. The Commonwealth later, of its own volition, moved to dismiss without prejudice.

A forensic analysis indicating a lack of *extant* child pornography (only on devices still present and seized 2+ weeks after the subject download), while surely relevant to the ultimate jury decision, would not vitiate pre-existing probable cause (which, recall, demands a common-sense, totality-of-the-circumstances inquiry) of the *prior* download, considering the other evidence described above. *See, e.g.*, *Kerns v. Bader*, 663 F.3d 1173, 1189-90 (10th Cir. 2011) ("Even if the police had said that the FN rifle wasn't involved in the shooting, sufficient other evidence existed to provide probable cause to think Mr. Kerns was the shooter, including Mr. Kerns's boasting about being able to hit the helicopter, his background, his many questionable statements, and his evasion of police.") (Gorsuch, J.); *United States v. Booker*, 612 F.3d 596, 601 (7th Cir. 2010) ("The possibility of an innocent explanation does not vitiate properly established probable

---

from the Sixth Circuit's predicate, which included that "police did not investigate the seized devices[.]" *See Jones*, 690 F. App'x at 335.

14

cause."); *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003) (recognizing that "probable cause may exist although a suspect is in fact innocent"); *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015); *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996); DE ##62-2, at 112; 62-6, at 47-48, 64-65; 62-7 (Engel Depo.), at 53, 68, 87; *cf. R.M.B. v. Bedford Cnty. (Va.) Sch. Bd.*, 169 F. Supp. 3d 647, 654 n.2 (W.D. Va. 2016) ("[A] negative field test does not necessarily vitiate probable cause."). Plaintiff's own expert acknowledged that such examinations do not necessarily uncover all items on a device. DE #62-5 (Daniel Depo.), at 43-45. Indeed, state Judge Clouse, presented with Daniel's report, declined dismissal and retained the case against Jones on the docket. *See* DE #62-7, at 35.

One additional matter deserves note. Defendants make no argument concerning *Sykes* element 4, but that prong could independently preclude success for Plaintiff. The record indicates that the Commonwealth effectuated dismissal of the charge against Jones *without prejudice*. *See, e.g.*, DE ##90-1 (Docket sheet, signed by Judge Clouse, indicating: "Dismiss w/out Prejudice"); 61-5 (Engel Depo.), at 20 (Depo. p. 74); 61-6 (Johnson Depo.), at 4 (Depo. p. 7); 69-3 (Browne Affidavit), at ¶ 10. Dismissal without prejudice does not mean that "the criminal proceeding [was] resolved in the plaintiff's favor." *Craft v. Billingslea*, No. 17-cv-12752, 2017 WL 6039559, at *5 (E.D. Mich. Dec. 6, 2017) ("Craft cites no Sixth Circuit decision—and the Court has not identified one—that establishes a dismissal without prejudice constitutes a favorable termination. Conversely, Defendants' argument that a dismissal without prejudice is not a favorable termination finds ample support from persuasive authorities. In *Mobley v. City of Detroit*, for instance, a court . . . dismissed plaintiffs' malicious prosecution claims under Section

1983 because the charges against plaintiffs were dismissed voluntarily. 938 F. Supp. 2d 669, 687 (E.D. Mich. 2012). Likewise, charges dropped after a hung jury (in favor of acquittal) did not constitute a favorable termination, and thus, a court dismissed a plaintiff's malicious prosecution claim. *Thornton v. City of Columbus*, 171 F. Supp. 3d 702, 710 (S.D. Ohio 2016) (citing *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir. 1980) (concluding that 'proceedings are terminated in favor of the accused only when their final disposition is such as to indicate the accused is not guilty.'))." (internal quotation marks and alteration removed)); *Leslie v. City of Detroit*, No. 16-11678, 2018 WL 1510636, at *6 (E.D. Mich. Mar. 26, 2018) ("[T]he dismissal of the claims against her without prejudice does not constitute a 'favorable resolution' for purposes of a malicious prosecution claim."); *Thorp v. Dist. of Columbia*, 142 F. Supp. 3d 132, 146-47 (D.D.C. 2015); *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018) (requiring "affirmative indications of innocence to establish 'favorable termination'"). Dismissal without prejudice, which involves no adjudication of guilt or innocence and does not preclude new charges on the same subject matter, does not indicate that the prosecution was "resolved in [Jones]'s favor." *Sykes*, 625 F.3d at 308-09. The Court does not issue a decision on this basis but notes its concern over the claim element.

Two concluding points. First, as to Sheriff Perdue, a "prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor." *S.L. ex rel. K.L. v. Pierce Tp. Bd. of Trs.*, 771 F.3d 956, 963 (6th Cir. 2014). Because there is, per the above analysis, no underlying Murray liability, Perdue likewise faces none. Additionally, there is no indication that Perdue, himself, "actively engaged in unconstitutional behavior." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir.

2006). Second, a like result pertains to Clark County. *See Baynes v. Cleland*, 799 F.3d 600, 622 (6th Cir. 2015).

Per this analysis, the officials' actions in this scenario were constitutionally valid (and certainly, in the qualified immunity context, not clearly invalid). Accordingly, the Court entirely dismisses Jones's federal malicious prosecution claim.

    *B.*    *Kentucky Malicious Prosecution*

In the Commonwealth, a

malicious prosecution action may be established by showing that:

1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding . . . against the plaintiff;

2) the defendant acted without probable cause;

3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice . . .;

4) the proceeding . . . terminated in favor of the person against whom it was brought; and

5) the plaintiff suffered damages as a result of the proceeding.

*Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016).[12]

---

[12] The Court also, for completeness, notes Kentucky's qualified immunity standard:

> Qualified official immunity applies to public officers or employees if their actions are discretionary (i.e., involving personal deliberation, decisions and judgment) and are made in good faith and within the scope of their authority or employment. This is intended to protect governmental officers or employees from liability for good faith judgment calls in a legally uncertain environment. . . . [I]f an act is discretionary, there is no immunity if it violates constitutional, statutory, or other clearly established rights, or if it is done willfully or maliciously with intent to harm, or if it is committed with a corrupt motive or in bad faith. The burden is on the plaintiff to show that the public official or employee was not acting in good faith.

The Court's conclusion above as to the lack-of-probable-cause element also decides this claim, as to Perdue and Murray.[13] *See id.*; *Allen v. Rucker*, 304 F. Supp. 3d 638, 647-48 (E.D. Ky. 2018); *Hall v. City of Williamsburg*, No. 6:16-304-DCR, 2017 WL 3668113, at *10 (E.D. Ky. Aug. 24, 2017); *King v. Storm*, No. 6:15-cv-172-GFVT, 2017 WL 2174959, at *8 (E.D Ky. May 17, 2017). The Court, accordingly, dismisses the state malicious prosecution claim against Perdue and Murray.

IV. **CONCLUSION**

Plaintiff makes many dramatic intonations about justice in this scenario. The Court shares regret over any day unnecessarily spent by a person in custody. Here, the pre-trial wheels—an apparatus involving not only law enforcement but also the lawyers for both sides and the state court—turned slowly. Jones has reason to feel bruised by the ultimate course of the case. That does mean he has a valid constitutional or state claim. There was probable cause for the prosecution, and the Commonwealth ultimately dismissed because it thought it did not have enough evidence to convict. The Court dislikes the delay and halting mechanics that led to the decision but sees no triable claim in the decision to end a case that was valid at inception.

For these reasons, the Court **GRANTS** DE #61 and will enter a separate Judgment.

This the 14th day of February, 2019.

---

*Autry v. W. Ky. Univ.*, 219 S.W.3d 713, 717 (Ky. 2007) (citations removed). Jones does not dispute that the relevant actions in this case were discretionary.

[13] Jones does not distinguish between Perdue and Murray in this analysis. As to Clark County, sovereign immunity acts as a shield. *See Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 163 (Ky. 2003). Plaintiff agrees and "does not oppose the dismissal of his state-law claims against Clark County on grounds of sovereign immunity." DE #69, at 1 n.1. Accordingly, the Court dismisses Jones's state-law malicious prosecution claim against Clark County.



Signed By:
*Robert E. Wier*
United States District Judge